941 So.2d 1237 (2006)
Miguel Jose GALLINAT, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-1322.
District Court of Appeal of Florida, Fifth District.
November 17, 2006.
*1238 Miguel Jose Gallinat, DeFuniak Springs, pro se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeffrey R. Casey, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
LAWSON, J.
We grant rehearing, vacate our prior opinion, and substitute the following:
Miguel Jose Gallinat appeals from an order determining the amount of jail credit to which he is entitled in three cases. We affirm, and hold that when sentencing documents erroneously over-report the amount of jail time actually served by a defendant prior to sentencing, and the error is apparent on the face of the record, double jeopardy principles generally do not bar a trial court from correcting the jail credit award to accurately reflect the amount of time previously served on the charge(s).

PROCEEDINGS BELOW
By prior order of the trial court (entered by a different judge), Gallinat was sentenced to concurrent prison terms of three years, one month and fifteen days in three separate felony cases. The sentencing documents sent to the Department of Corrections also reflect credit for 285 days served in county jail prior to sentencing in each case. However, court records actually show that while Gallinat was entitled to 285 days in case no. 02-357, he had only served 264 days in case no. 03-629 and 96 days in case no. 02-657, prior to sentencing. Three months later, the trial court entered the "corrected order" now being challenged, which reduced the jail credit award in case nos. 03-629 and 02-657 to the time actually served by Gallinat, as reflected in the records of each case.

WITHDRAWN OPINION
In our prior opinion, we reversed the trial court's order in reliance on Syverson v. State, 659 So.2d 1344 (Fla. 5th DCA 1995), which held that a trial court retains jurisdiction to correct an erroneous over-award of jail credit for only sixty days after imposition of the sentence. In its motion for rehearing, the State correctly points out that Syverson was decided under a prior version of Florida Rule of Criminal Procedure 3.800. The rule was amended effective January 1, 2001, to provide that: "A court may at any time correct . . . a sentence that does not grant proper credit for time served when it is affirmatively alleged that the court records demonstrate on their face an entitlement *1239 to that relief. . . ." See Amendments to the Florida Rules of Criminal Procedure, 794 So.2d 457 (Fla.2000). Therefore, our reliance on Syverson was misplaced. There was no sixty-day jurisdictional bar to the trial court's correction of the jail credit award to Gallinat.

ISSUE PRESENTED
We are now faced, however, with precedent from both the First and Second Districts holding that a trial court can never correct an erroneous award of too much jail credit on the theory that this increases the sentence in violation of the prohibition against double jeopardy. The Second District announced this rule in Gilmore v. State, 523 So.2d 1244 (Fla. 2d DCA 1988), and has followed it consistently. See King v. State, 913 So.2d 758 (Fla. 2d DCA 2005); Lebron v. State, 870 So.2d 165 (Fla. 2d DCA 2004); Platt v. State, 827 So.2d 1064 (Fla. 2d DCA 2002); Keene v. State, 826 So.2d 327 (Fla. 2d DCA 2002); Linton v. State, 702 So.2d 236 (Fla. 2d DCA 1997). The First District, citing Lebron and Linton, has also followed the rule. See Wheeler v. State, 880 So.2d 1260 (Fla. 1st DCA 2004).
In our view, however, correcting an erroneous jail credit calculation in no way increases the sentence imposed. With a few exceptions, which we will address, the question is simply a factual one of how much of the imposed sentence a defendant has already served. To us, this seems quite straightforward. A correction to accurately reflect time served in a county jail seems no different than a correction made by the executive branch of a clerical error that overstated the amount of prison time an inmate had served. For example, it is certainly foreseeable that a Department of Corrections data entry operator could incorrectly input an inmate's commitment date into a computer, resulting in a record stating that the inmate had already served several years in prison on his first day of commitment. Typically, this type of mistake would be caught by an auditor at the Department's Bureau of Sentence Structure in Tallahassee, and corrected. We see no difference between a correction made by one of the Department's commitment auditors and a judge's correction in the reporting of time that an inmate has served toward a sentence when the error is brought to the court's attention by the state or the court's clerk.[1] Neither correction implicates a defendant's constitutional right to be free of double jeopardy.
In general, the Fifth Amendment's Double Jeopardy Clause[2] "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187 (1957). "The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Id. at 187. In practice, the Double Jeopardy Clause consists of three separate constitutional protections: "It protects *1240 against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).
With respect to this last protection, "the pronouncement of sentence has never carried the finality that attaches to an acquittal." United States v. DiFrancesco, 449 U.S. 117, 133 (1980). For example, although the government may not appeal from an acquittal in an attempt to secure a second trial against the defendant, it can appeal from a sentence that fails to conform to the requirements of law and seek a greater sentence on remand if it prevails. Id. at 136. However, the Double Jeopardy Clause has been held to bar a judge from recalling a defendant to increase his legally imposed sentence after the defendant has begun serving the sentence. Id. at 135. Florida's Supreme Court has further refined this concept by holding that a court retains authority to increase a valid sentence only until the conclusion of the initial sentencing hearing. Troupe v. Rowe, 283 So.2d 857 (Fla. 1973). Under Troupe, when the sentencing hearing concludes, jeopardy attaches and the court can no longer increase the sentence without violating the Double Jeopardy Clause. Id. at 860.[3]
As alluded to earlier, we see two types of postsentencing orders involving jail credit where this general prohibition should apply. First, there are cases in which the state and a defendant negotiate an overall sentence structure that includes a stipulated amount of time served. In these cases, the number of days credit to be given are part of the bargained-for sentence. If the trial court exercises its discretion to accept the plea and impose the agreed sentence, the court should not be allowed to later lower the agreed upon jail credit figure. For example, if the negotiated plea were to three years in prison with a stipulated credit for one year of time served, the defendant has entered a deal pursuant to which he only has two years left to serve. Once the court accepts the deal and imposes the sentence, any subsequent order reducing the credit for time served would effectively increase the remaining prison time beyond the agreed two year term, and would therefore violate the principle recognized in Troupe.
Second, there are instances in which a trial court exercises discretion in the award of jail credit. For example, a court may award credit for time served "when the defendant was incarcerated in another state solely because of the Florida offense for which he or she is being sentenced," Kronz v. State, 462 So.2d 450, 451 (Fla. 1985), but is not required to do so. If the court imposed a three year prison sentence and, as part of the sentencing hearing, exercised its discretion by awarding one year of out-of-state time, this discretionary judicial decision would effectively reduce the overall sentence to two years. Thereafter, any decision to reduce this discretionary award of credit would again increase the overall sentence beyond two years, and violate double jeopardy as outlined in Troupe.
*1241 However, these two circumstances are the exception. In most cases, the trial court simply imposes a sentence with the understanding by all parties that the defendant is legally entitled to credit against that sentence for whatever time he or she has actually served. The clerk then typically provides the court with a time-served calculation based upon his or her review of the court file (or from a clerk's computer link to local county jail records). Then, the court simply announces the amount of credit calculated by the clerk, which is noted in the sentencing documents.[4] Under these circumstances, where the only understanding is that the defendant will serve the entire imposed sentence, and will be given credit for whatever time he or she is legally entitled, we do not believe that a later correction to the time served calculation reflected in the sentencing documents increases the sentence for double jeopardy purposes. We reach this conclusion for four reasons.
First, in this more "typical" case, the time served calculation is simply reported by the judge, if at all, for the benefit of the institution to which the defendant will be sent to serve the remainder of his or her sentence,[5] and is not a result of judicial decision-making. For example, if the judge imposes a three-year sentence, and reports one year of time served because the clerk read the time served calculation from the wrong file, the judicially determined sentence is still three years in prison. The judge has not exercised his discretion to reduce the sentence by accepting a stipulated amount of time served agreed to by the parties or by granting discretionary time served to which the defendant is not legally entitled. Under this circumstance, if the defendant had only served two days in jail prior to sentencing, correcting the time served to properly reflect that historical fact will not result in imprisonment for more than three years, and does not "increase the sentence." Rather, the correction simply ensures that the defendant will serve the sentence judicially imposed.
Second, the United States Supreme Court has cautioned that the constitutional prohibition against double jeopardy should not be used to turn sentencing into "a game in which the wrong move by the judge means immunity for the prisoner." Bozza v. United States, 330 U.S. 160, 166-167 (1947). That is exactly what would happen here if we were to hold that a judge could never correct a time-served calculation in the "typical" case.
Third, in addressing double jeopardy claims in the sentencing context, the United States Supreme Court has focused on the "legitimate expectations" of the defendant. See, e.g., DiFrancesco, 449 U.S. at 137 (A defendant's "legitimate *1242 expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked."). In the typical case, the defendant's only legitimate expectation is that he or she will serve the full sentence, and no more. Consequently, the defendant has a right to expect that any time spent in custody on an offense prior to sentencing will be accurately communicated to the facility at which the remainder of the sentence will be served, so that he or she is given full credit for all time actually served on an offense. Because correcting a time-served reporting error does not defeat a defendant's legitimate expectations, it should not be held to violate double jeopardy. Id.
Finally, we believe that it is also appropriate to consider the legitimate expectations of the victim(s) of a particular crime involved in a case where jail credit is erroneously overstated, and of society in general. Both should be able to legitimately expect that the crime will be punished, which includes a right to expect that a lawfully-imposed sentence will be fully served. There are, of course, legally-approved methods for reducing time served on a sentence, such as the award of administrative gain time, and clemency. However, these procedures have been lawfully adopted by our state's elected representatives. A judicially-created rule that shortens a lawfully-imposed sentence by barring anyone from correcting a mistake that credits the defendant with time against his sentence that he or she has never actually served clearly thwarts society's interest in extracting a full and just punishment for crime.
For these reasons, we affirm the order on appeal, and certify conflict with the First District's decision in Wheeler v. State, 880 So.2d 1260 (Fla. 1st DCA 2004), and with the following Second District decisions: Gilmore v. State, 523 So.2d 1244 (Fla. 2d DCA 1988); King v. State, 913 So.2d 758 (Fla. 2d DCA 2005); Lebron v. State, 870 So.2d 165 (Fla. 2d DCA 2004); Platt v. State, 827 So.2d 1064 (Fla. 2d DCA 2002); Keene v. State, 826 So.2d 327 (Fla. 2d DCA 2002); and Linton v. State, 702 So.2d 236 (Fla. 2d DCA 1997).
AFFIRMED; CONFLICT CERTIFIED.
THOMPSON and EVANDER, JJ., concur.
NOTES
[1] In some circuits, the clerk's office regularly conducts its own audit or review of court minutes and clerk-generated sentencing documents. When errors are found, the clerk will present the judge with "corrected" documents for signature.
[2] "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const., Amend. 5.
[3] Other state courts have reached different conclusions as to exactly when a trial court loses the ability to increase a sentence without violating double jeopardy. A comprehensive overview of the law in all fifty states regarding this issue is found at 26 A.L.R. 4th 905.
[4] In many Florida jurisdictions time served is not regularly provided to the trial court at sentencing. In these jurisdictions, the court simply announces that the defendant will be given credit for time served. After court, the clerk's office (or jail personnel) then calculate the amount of time served and add their calculation to the defendant's sentencing and commitment package.
[5] The Department of Corrections typically does not have access to local jail records to determine time served prior to sentencing, and therefore relies upon the report of time served from the sentencing documents to calculate a release date. Even if the remainder of the sentence is a local jail sentence, the local jail generally will only have a record of the time that an inmate has spent in their facility on a charge. If the inmate was arrested on the charge in another Florida county, he or she would generally be entitled to credit for that time, but it would not be reflected in the local jail records. So, again, the institution would rely upon the time served report in the sentencing documents.